DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:00-cr-0654 |
| ) | |
| DION LAWRENCE, ) | |
| ) | |
| Defendant. ) | |

**ATTORNEYS:**

**Gretchen C.F. Shappert, United States Attorney**
**Adam F. Sleeper, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Dion Lawrence**
Allenwood Medium - FCI
Allenwood, Pa.
    *Pro se.*

## MEMORANDUM OPINION

**MOLLOY, C.J.**

**BEFORE THE COURT** is the motion of Dion Lawrence ("Lawrence") for compassionate release, filed September 29, 2020. ECF No. 202. For the reasons set forth below, the Court will deny the motion.

### I.  BACKGROUND

On November 16, 2000, a federal grand jury in the U.S. Virgin Islands returned a sealed indictment, followed on March 15, 2001 by a second superseding indictment charging Lawrence with three felony counts: first degree murder, a violation of the Virgin Islands Code, possession of firearm by an alien, and using and carrying a firearm during and in relation to a crime of violence. These three charges comprised Counts One, Two, and Three, respectively, of the superseding indictment.

This matter proceeded to trial on April 29, 2002, and on April 30, 2002, the jury returned its verdict adjudging Lawrence guilty on each of the three counts of the superseding indictment. Lawrence was then sentenced on August 14, 2002 to life imprisonment without the possibility of suspension, parole, or adjustment on Count 1, 120 months imprisonment on Count 2, and to life imprisonment on Count 3. Because Count 1 was a Virgin Islands territorial sentence, the Court further ordered that Lawrence's sentences run concurrently and recommended that Lawrence serve his federal sentences first. Thus, Lawrence's sentence as to Count 2 has since been satisfied, and Lawrence continues to serve concurrent life sentences on Counts 1 and 3, with the former being a territorial sentence without the possibility of suspension, parole, or adjustment.

On August 7, 2020, Lawrence sought compassionate release from the warden of FCC Allenwood, where he is being held. On August 13, 2020, Warden Catricia L. Howard responded, denying Lawrence's request. On September 29, 2020, Lawrence filed his instant motion for compassionate release, ECF No. 202, requesting compassionate release due to his high blood pressure and the COVID-19 pandemic.  On October 13, 2020, the United States of America (the "Government") filed its opposition to Lawrence's motion for compassionate release. ECF No. 204. Lawrence filed his reply thereto on November 6, 2020. ECF No. 205.

## II.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582, a sentencing court has the authority to modify a sentence imposed under certain conditions. Section 3582 provides in pertinent part that

> (A) the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . ., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1).

The Third Circuit has explained that, prior to a District Court considering a defendant's motion for compassionate release pursuant to Section 3582(c)(1)(A), either (1) the Bureau of Prisons ("BOP") must have had 30 days to consider the defendant's request that the BOP move for compassionate release on his behalf, or (2) the defendant must administratively exhaust an adverse decision by the BOP in response to that defendant's request within that time period. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Failure to comply with Section 3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release." *See id.*

Once a defendant has met Section 3582(c)(1)(A)'s exhaustion requirement, "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "But before granting compassionate release, a district court must 'consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.'" *Id.* "Those factors include, among other things, 'the history and characteristics of the defendant' and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct.'" *Id.* at 330 (citations omitted).

In addition, the United States Sentencing Commission has issued a policy statement addressing the reduction of sentences pursuant to Section 3582(c)(1)(A). That statement provides that a court may reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. Application Note 1 to the USSC policy statement sets forth several circumstances under which the USSC has determined "extraordinary and compelling reasons" exist. Such circumstances include certain medical,

age-related, or family circumstances, and a catchall provision—where other extraordinary and compelling reasons exist in a defendant's case. U.S.S.G. § 1B1.13 cmt. n. 1(A)-(D).

The defendant has the burden to show she is entitled to a sentence reduction pursuant to Section 3582(c)(1). *Cf. United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (noting that the defendant has the burden of establishing that he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2)); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

### III. DISCUSSION

Absent an endorsement from the warden of his correctional facility, Lawrence must first make the threshold showing that he has exhausted his administrative remedies to succeed on her motion for compassionate release. *See* 18 U.S.C. § 2582(c)(1)(A). Only upon such a showing may the Court proceed to consider whether extraordinary and compelling reasons warrant a reduction of Lawrence's sentence. *See Raia*, 954 F.3d at 597.

#### A. Lawrence has exhausted his administrative remedies.

Here, Lawrence appears to have made his request to the warden on August 7, 2020, as evinced by the warden's August 13, 2020 denial. ECF No. 202-1, at 2. While there is nothing in the record to indicate that Lawrence appealed his administrative denial or sought any other administrative remedies beyond his initial request, these steps are not necessary. The Third Circuit has held that regardless of subsequent administrative steps taken by an inmate seeking compassionate release, an inmate may file his request with the Court thirty days after the Bureau of Prisons receives his initial request. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Because Lawrence did not file his instant motion until September 29, 2020, he has therefore exhausted his administrative remedies and the Court has the authority to consider the merits of the motion.

#### B. Lawrence fails to show extraordinary and compelling circumstances.

In his motion, Lawrence requests "compassionate release through [sic] to the COVID-19 virus," arguing that he has "high blood pressure" and doesn't "want to die from this." ECF No. 202, at 1. Though Lawrence provides no documentation of his high blood pressure in his

initial motion,[1] even taking Lawrence's health problems at face value, he still does not establish extraordinary and compelling circumstances to warrant early release.

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner... ." *United States v. Roeder*, 807 Fed. App'x 157, 161 n. 16 (3d Cir. 2020); *see also Raia*, 954 F.3d at 597 ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). In addition to some specific factor placing an inmate at an elevated risk of grave illness or death if infected by COVID-19, an inmate must further show "an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020); *see also, e.g., United States v. Gray*, 2020 WL 5350444, at *1 (W.D. Pa. Sept. 4, 2020) ("[A] medically compromised prisoner's showing of non-speculative risk of exposure to COVID-19 can justify compassionate release... ."); *United States v. Encarnacion*, Case No. 1:17-cr-0037-WAL-GWC, ECF No. 114, at 5-6 (D.V.I. Jan. 4, 2021) (finding that "extraordinary and compelling reasons for Defendant's release do not exist" where less than 1% of the population in which Defendant was held was infected with COVID-19.); *United States v. Gold*, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. 2020) (finding even courts that take a "liberal view" of the Commission's policy statements routinely deny compassionate release if defendant's facility does not have widespread transmission and defendant's health risk factors are shared by many other prisoners).

As of the date of this opinion, there are zero positive cases of COVID-19 in Allenwood Medium FCI, where Lawrence is housed. *Federal Bureau of Prisons COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited July 20, 2021). In fact, there are zero inmate cases and a single staff case in the entire Allenwood complex. *Id.* While the COVID-19 pandemic certainly presents dynamic challenges, the Court cannot conclude that

---

[1] Lawrence affixed a prescription label for hydrochlorothiazide to his reply brief. The Court takes judicial notice that treatment of high blood pressure is one of multiple uses for this drug.

*U.S. v. Lawrence*
Case No. 3:00-cr-0654
Memorandum Opinion
Page 6 of 6

extraordinary and compelling circumstance exist from the total absence of the COVID-19 virus in Lawrence's facility. Therefore, Lawrence's motion must be denied.[2]

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Lawrence has failed to establish a nonspeculative risk of contracting COVID-19, and therefore has failed to demonstrate extraordinary and compelling circumstances to justify his compassionate release due to the COVID-19 pandemic. Lawrence's motion for compassionate release will be denied by separate Order.

**Dated:** July 20, 2021                   /s/  *Robert A. Molloy*
                                           **ROBERT A. MOLLOY**
                                           **Chief Judge**

---

[2] Moreover, the Court questions whether it has the authority to grant Lawrence's motion for compassionate release. Lawrence was committed to the custody of the Virgin Islands Bureau of Corrections for his sentence of life imprisonment as to Count 1. The sentence for Count 1 is to be served concurrently with his sentence of life imprisonment on Count 3, for which he is committed to the custody of the United States Bureau of Prisons. Importantly, because Lawrence is not technically in BOP's custody for his life sentence on Count 1, it unclear whether the compassionate release statutory framework permits any action as to that count. At most, if Lawrence were granted compassionate release on Count 3, he would be immediately transferred to the custody of the Virgin Islands Bureau of Corrections, where he would serve the remainder of his life sentence without the possibility of parole or modification. This in turn would render any relief granted by the Court moot, because if, *arguendo*, the Court found that Lawrence had demonstrated extraordinary and compelling reasons to warrant his release, he would nevertheless remain incarcerated. However, the Court need not reach this issue, as the current nonexistence of COVID-19 in Allenwood Medium – FCI precludes compassionate release in this instance.